**Hearing Date: January 23, 2019 at 10:00 a.m.**
**Objection Deadline: January 16, 2019 at 4:00 p.m.**

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to Fred Stevens, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                                          :
                                                               :  Chapter 11
EMC BRONXVILLE METROPOLITAN, LLC,   :
                                                               :  Case No. 18-22963 (RDD)
                                        Debtor.        :
----------------------------------------------------------------x

**MOTION SEEKING APPROVAL OF**
**STIPULATION AND ORDER BETWEEN AND AMONG CHAPTER 11**
**TRUSTEE AND DEBTOR'S PREPETITION LENDER: (I) ESTABLISHING**
**STIPULATIONS REGARDING THE EXTENT, VALIDITY AND PRIORITY OF**
**LENDER'S LIENS, AND DEADLINES FOR COMMENCING ANY**
**CHALLENGES; (II) GRANTING ADEQUATE PROTECTION TO LENDER TO**
**THE EXTENT THE TRUSTEE USES ANY OF ITS CASH COLLATERAL; (III)**
**PROVIDING FOR A CARVE-OUT OF LENDER'S LIENS IN CONNECTION**
**WITH THE COSTS AND EXPENSES OF THE ESTATE IN LIQUIDATING THE**
**DEBTOR'S ASSETS; AND (IV) GRANTING RELATED RELIEF**

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Fred Stevens, chapter 11 Trustee (the "Trustee") of EMC Bronxville Metropolitan, LLC, the above captioned debtor (the "Debtor"), hereby moves (the "Motion") pursuant to sections 105, 361, 362 and 363 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), seeking: inter alia: approval of that certain stipulation and order dated as of

December 7, 2018 (the "Stipulation and Order"), a copy of which is annexed hereto as Exhibit A, between and among the Trustee and Popular Bank, f/k/a Banco Popular North America (the "Lender"): (i) establishing the extent, validity and priority of the liens of Lender, and deadlines for commencing any challenges to those liens; (ii) granting adequate protection to the Lender to the extent the Trustee uses any of the Lender's cash collateral; (iii) providing for a carve-out of the Lender's liens in connection with the costs and expenses of the estate in liquidating the Debtor's assets; and (iv) granting related relief. In support of the Motion, the Trustee respectfully refers to and incorporates the contents of the declaration of Fred Stevens, pursuant to 28 U.S.C. §1746, dated December 26, 2018 (the "Stevens Declaration"), a copy of which is annexed hereto as Exhibit B, submitted in support of the relief sought by the Motion, and further respectfully sets forth and states as follows:

## PRELIMINARY STATEMENT

The Debtor is the owner of that certain planned condominium development project (the "Project") and associated real and personal property located at 759 Palmer Road, Yonkers, New York (Block 5368, Lot 48) (the "Property"). The Trustee is informed that development of the Property stalled prior to the instant chapter 11 proceeding and the Debtor is currently non-operational. Lender is the Debtor's prepetition senior secured lender and it holds a lien on substantially all of the Debtor's assets, including its cash. Notwithstanding the Debtor's lack of operations, mere ownership of the Property results in certain ongoing administrative expenses that must be paid, including basic utility service and insurance. The Trustee, with the support of the Lender, intends to satisfy the basic administrative expenses that are reasonable and necessary in order to complete a relatively prompt marketing and sale process with regard to the Property. Lender has made clear that it will not agree to fund expenses and a sale process unless its lien

2

rights are formally recognized in the manner set forth in the Stipulation and Order. Further, the Trustee insisted that he will require an appropriate carve-out in connection with his determination to, among other things, engage professionals and pursue a formal marketing and sale of the Property for the benefit of Lender and this estate overall. The Stipulation and Order was negotiated between and among the Trustee and Lender, through their respective counsel, with a goal of providing for the reasonable funding of administrative expenses to be incurred by the Trustee and this estate, including the costs of sale of the Property, through a carve-out from the Lender's liens. By this Motion, the Trustee seeks approval of the Stipulation and Order upon sufficient notice to parties in interest.

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief requested herein is sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b), 4001(d) and 9014.

## BACKGROUND

5. On June 22, 2018 (the "Petition Date"), Thomas E Haynes Architect, Werner E. Tietjen, PE and Hall Heating & Cooling Services Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States

3

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court" or the or this "Court").

6.  On July 23, 2018, the Court entered an order converting the case (the "Case") from a case under Chapter 7 to a case under Chapter 11 [Docket No. 14]. On September 20, 2018, the Court entered an order (the "Trustee Order") directing the United States Trustee to appoint a Chapter 11 trustee for the Debtor and its estate [Docket No. 37]. On September 24, 2018, the United States Trustee appointed Fred Stevens to serve as the Trustee [Docket No. 39] and the Court approved the appointment [Docket No. 43]. On October 30, 2018, this Court entered an order granting relief to the Debtor under Chapter 11 *nunc pro tunc* to July 23, 2018 (the "Relief Date") [Docket No. 54].

A. **Debtor's Property**

7.  On or around June 10, 2013, the Debtor was formed as a New York State limited liability company to develop the Project, which was a proposed 35-unit multi-family condominium loft property consisting of a three-story building that was under construction/conversion to a luxury residential project with 6-levels, plus a penthouse and a total of 105,346 saleable square feet. The Project is located along Palmer Avenue and the Sprain Brook Parkway in the northeast section of Yonkers, near the Village of Bronxville border.

8.  As set forth above, the primary assets of this Debtor relate to the potential equity value to be realized upon completion of the Project. Apart from the Property described above, the only other assets of the Debtor that the Trustee is aware of include certain furniture and fixtures located in a storage facility in Paterson, New Jersey (the "F&E") and potential Causes of Action against third parties (as defined below).

4

B. **Popular Bank – First Priority Secured**

9. Prior to the Petition Date, the Lender asserts that it made available to the Debtor up to the total amount of principal indebtedness of $24,550,000.00 to purchase and develop the Property, which aggregate amount was divided into (i) a building loan in the total principal amount of $18,900,000.00 (the "Building Loan") and (ii) a project loan in the total principal amount of $5,650,000.00 (the "Project Loan," and collectively with the Building Loan, the "Loan"), pursuant to the terms of a certain loan agreement, dated November 20, 2014 (the "Loan Agreement") by and between the Lender and Debtor, together with Donald Wellington, Kerry Wellington and WY Builders Metropolitan, LLC, as guarantors.

10. The Building Loan is evidenced by a promissory note issued by the Debtor to the Lender, dated November 20, 2014 (the "Building Loan Note"), and the Lender asserts is secured by the Property and related rents, rights and proceeds pursuant to a certain mortgage and security agreement issued by the Debtor (the "Building Loan Mortgage") and related assignments and agreements.

11. The Project Loan is evidenced by a promissory note issued by the Debtor to the Lender, dated November 20, 2014 (the "Project Loan Note"), and the Lender asserts it is secured by the Property and related rents, rights and proceeds pursuant to a certain mortgage and security agreement issued by the Debtor (the "Project Loan Mortgage") and related assignments and agreements.

12. Lender asserts that Donald Wellington and Kerry Wellington issued a payment guaranty agreement in favor of the Lender, dated November 20, 2014, and Edgar Melo Costa issued a payment guaranty agreement dated April 30, 2018 pursuant to which each guaranteed the Debtor's obligations to repay the Loans (the "Payment Guaranty"), and Donald Wellington, Kerry

5

Wellington and WY Builders Metropolitan, LLC issued a completion guaranty agreement in favor of the Lender, dated November 20, 2014, pursuant to which each guaranteed the completion of the Project (the "Completion Guaranty") (the Loan Agreement, Building Loan Note, Building Loan Mortgage, Project Loan Note, Project Loan Mortgage, Payment Guaranty, Completion Guaranty and all other agreements and documents evidencing the Loans, together with any amendments or supplements thereto as may have been entered into, are collectively referred to herein as the "Loan Documents").

C. **Property Taxes and Mechanic's Liens**

13. A search, dated July 2, 2018 revealed the following mechanic's liens against the Project: (i) Easton-Steinmeyer & Associates LLC - $156,588.20; (ii) Joe Lombardo Plumbing & Heating of Rockland Inc. - $142,159.84; (iii) John V. Krupa - $390,000.00; (iv) Naber Electric, Inc. - $221,963.50; (iv) Perimeter Concrete Corp. - $194,200.00; (v) Spray Enterprise - $19,990.00; and (vi) TNT Contracting Group, LLC - $309,797.00. The Trustee also become aware of the following mechanic's lien filed after the Petition Date: A&A Fab LLC - $547,331.59. In addition, the Debtor's records identify outstanding property taxes of $96,583.74. At this time, it is unclear if the taxes or any of the mechanics' liens are valid and outstanding.

14. In addition to the foregoing potentially secured obligations and although the Debtor's bar date for filing claims has yet to pass, the Debtor appears to have substantial additional unsecured debt.

D. **Lender's Interest in Cash Collateral**

15. As a result of the Building Loan Mortgage and Project Loan Mortgage (collectively, the "Mortgages"), the Lender asserts that it holds security interests in, and liens on (the "Prepetition Liens") all of the Debtor's real and personal property and fixtures, in each case whether then or

6

thereinafter existing or then owned or thereafter acquired and whether subject to the Uniform Commercial Code including, but not limited to, all goods, money, contract rights, instruments, accounts, farm products, inventory, equipment, documents, chattel paper, securities and general intangibles and all interest, dividends and other distributions paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of all of the foregoing (collectively, the "Prepetition Collateral"). Prepetition Collateral is intended to include any cash collateral as that term is defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral").

16.  The Lender asserts that as of the Petition Date, the Debtor is indebted to Lender, exclusive of legal expenses, costs, insurance and taxes, in the amount of $16,378,235.04 on account of the Building Loan, and $6,691,385.34 on account of the Project Loan which are secured by the Prepetition Liens against the Prepetition Collateral (collectively, the "Secured Prepetition Obligations").

## RELIEF REQUESTED

17.  By this Motion, the Trustee respectfully requests, pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b), 4001(d) and 9014, approval of the Stipulation and Order (I) establishing the extent, validity and priority of the Lender's Prepetition Liens, and deadlines for commencing any challenges to those Prepetition Liens and underlying claims; (II) granting adequate protection to the Lender to the extent the Trustee uses any of the Lender's Cash Collateral; and (III) providing for a carve-out of the Lender's Prepetition Liens in connection with the costs and expenses of the estate in liquidating the Debtor's assets (the "Carve-Out").

**AUTHORITY FOR USE OF CASH COLLATERAL**

18. A trustee may be authorized pursuant to court order, to use cash collateral in the ordinary course of its business operations under sections 363(c) and 1107 of the Bankruptcy Court. This Court may condition such use, pursuant to section 363(e) of the Bankruptcy Code as is necessary to provide adequate protection of any interest held therein by any entity other than the debtor in possession.

19. Courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and thus maximize the value of an estate for all interested parties. See In re Realty Southwest Assoc., 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); H.R. Rep. No. 595, 95th Cong., 1st Sess. 344 (1977); 3 Collier on Bankruptcy 363.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006); see also In re Dynaco, 162 B.R. 389, 396; In re Stein, 19 B.R. 458 (Bania. E.D. Pa. 1982). Bankruptcy Rule 4001(b) governs authorization for utilizing cash collateral. After a hearing held on at least fourteen days' notice, the court may grant the authority to use cash collateral on a permanent basis and other permanent relief requested herein.

20. A trustee may not use cash collateral unless "(A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

21. The Trustee does not presently have sufficient available sources of cash, capital or financing to maintain the Property while devising and implementing a strategy for the sale of the Property or restructuring of the Debtor. The Lender has agreed to advance certain expenditures directly to third parties as necessary to maintain the Property, including payments for property and

general liability insurance coverage that are necessary to protect the Property and Debtor's estate and any necessary utility charges and deposits associated with the Property.

22. Without specifying that the same is Cash Collateral, the Stipulation and Order provides that all advances for necessary expenditures made by the Lender at the request of the Trustee shall be automatically added to the amount of the Prepetition Secured Obligations. It further provides that the Trustee shall be entitled to use any Cash Collateral, accrue administrative expenses and use or sell the Prepetition Collateral in accordance with and subject to the terms and conditions of the Stipulation and Order. In the event that the Trustee recovers Cash Collateral following the date of the Stipulation and Order, the Trustee's proposed use of Cash Collateral shall be consistent with and for the purposes of protecting and maintaining the Property and fulfilling the Trustee's fiduciary obligations.

A. **Adequate Protection**

23. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Permissible forms of adequate protection include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. The purpose of adequate protection is to protect a secured creditor from diminution in the value of its property interest in its collateral during the period of use, sale, or lease. In re Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); see also Delbridge v. Production Credit Assoc. and Fed. Land Bank, 104 B.R. 824, 827-28 (E.D. Mich. 1989); In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990). The appropriate

9

form of adequate protection must be determined on a case-by-case basis. See In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987); In re Martin, 761 F.2d 472, 474 (8th Cir. 1985).

24. As adequate protection for any diminution in the value of the Prepetition Collateral resulting from (i) the use of the Cash Collateral pursuant to Section 363(e) of the Bankruptcy, (ii) the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) pursuant to Section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code, the Trustee is requesting that the Lender be granted (effective as of the Petition Date and without the necessity of the execution by the Debtor of any other security agreement or pledge agreement), pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to the same extent, priority and validity as the Prepetition Liens existing with respect to the Prepetition Collateral as of the Petition Date, valid and perfected, replacement security interests in, and liens on (collectively, the "Replacement Liens"), all of the Debtor's right, title and interest in and to all of the Debtor's existing and after-acquired tangible and intangible personal property in existence on or acquired or created at any time after the Petition Date, inclusive of the type and kind previously identified as the Prepetition Collateral, (collectively, the "Postpetition Collateral"), junior only to the Carve-Out (as defined below). The Stipulation and Order then clarifies and intentionally excludes from the scope of Postpetition Collateral, the proceeds of any claims or causes of action of the Trustee, Debtor or the Debtor's estate that may later be commenced under chapter 5 of the Bankruptcy Code (the "Avoidance Actions") or as against the former owners, managers, directors, officers, or other persons or entities in control of the Debtor under any theory at law or in equity (the "Insider Actions", and together with the Avoidance Actions, the "Causes of Action").

B. **Negotiated Carve-Out**

25.     In addition to excluding Causes of Action from the scope of Postpetition Collateral, the Trustee negotiated for an appropriate carve-out from the liens and claims of the Lender under the Stipulation and Order (the "Carve-Out") that will permit the Trustee to, among other things, investigate the liens and claims of the Lender, effectuate a proper marketing and sale of the Property and pay associated professional costs.  In addition, and as set forth in the Stipulation and Order, the Trustee negotiated for $200,000 to be set aside for the benefit of the estate which will hopefully permit the Trustee to make a distribution to junior creditors regardless of whether the Property is sold for greater than the Secured Prepetition Obligations of the Lender.

26.     Through the Stipulation and Order then, the Lender expressly agrees that the Prepetition Liens, any Replacement Liens, and any rights of Lender under Section 507(b) of the Bankruptcy Code are all subject to the Carve-Out which includes:

   a. all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest pursuant section 3717 of title 31 of the United States Code,

   b. the costs and administrative expenses not to exceed $25,000 in the aggregate that are permitted to be incurred by any chapter 7 trustee pursuant to an order of this Court following any conversion of any of the Case pursuant to section 1112 of the Bankruptcy Code,

   c. any allowed commissions and disbursement of the Trustee not to exceed the limitations imposed by Section 326 of the Bankruptcy Code; provided further that the Parties anticipate that if marketing and sale of the Property

11

    proceeds with approval under section 363 of the Bankruptcy Code and without protracted litigation or competing chapter 11 plan scenarios, that the reasonable allowed commission due the Trustee should not exceed one percent (1%) of disbursements[1],

d. the payment of allowed professional fees, commissions and disbursements (the "Professional Fees and Disbursements") incurred by the professionals or brokers retained by the Trustee for reasonable and necessary case matters, other than investigation and prosecution of any Causes of Action, closing costs and title charges necessary to close title on the sale of the Property, and

e. $200,000 to be retained by the Trustee and used in the administration of the estate.

27. Lender negotiated for a full reservation of rights to object to the allowance of any Professional Fees and Disbursements incurred by the Trustees professionals notwithstanding the Carve-Out. Further, the Lender negotiated for certain limitations in relation to the Professional Fees and Disbursements subject to the Carve-Out. For instance, (a) no more than $20,000 may be used for investigating the Lender's Prepetition Liens, and (b) no fees shall be paid in connection with any Challenge (as defined below), to contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent, or enforceability of the Secured Prepetition

---

[1] For the avoidance of doubt, any limitation on the commissions of the Trustee contained in this paragraph 6 are applicable to the Carve-Out only and are not intended to apply under circumstances where the Carve-Out is either not utilized or applied, or otherwise in the event that the Trustee recovers assets and disburses funds unrelated to the sale of the Property.

Obligations, the Prepetition Liens, or the Replacement Liens, or to assert any claims or cause of action against Lender.

28. Based on the foregoing, the Trustee respectfully submits that the adequate protection offered to Lender under the Stipulation and Order will sufficiently protect Lender's interests in the Cash Collateral and in the Prepetition Collateral from any diminution in value and is permissible under the Bankruptcy Code. The Trustee also respectfully requests that the Court approve the Carve-Out as reasonable and necessary under the circumstances of this Case.

C. **Validity and Priority of Liens**

29. The Replacement Liens granted under the Stipulation and Order shall constitute valid and duly perfected security interests and liens as of the Petition Date, and Lender shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action. Moreover, the Replacement Liens are intended to be junior in priority to any validly existing, properly perfected and enforceable lien which is determined to be senior in priority to the security interest of Lender.

30. The Replacement Liens granted pursuant to the provisions of the Stipulation and Order and any actions taken by Lender pursuant thereto shall survive entry of any order which may be entered (a) converting the Case to a chapter 7 case or (b) dismissing the Case, and such Replacement Liens shall maintain their priority as provided by the Stipulation and Order until all of the Secured Prepetition Obligations are indefeasibly paid in full.

31. The Stipulation and Order contains a standard lien challenge right that permits any party in interest, including without limitation the Trustee and any statutory committee to investigate and challenge by adversary proceeding or contested matters, the amount, validity,

enforceability, perfection or priority of the Secured Prepetition Obligations or the Prepetition Liens on or related to the Prepetition Collateral in respect thereof, no later than seventy-five (75) days from the entry of the Stipulation and Order.

33. If no such challenge is timely commenced as provided in the foregoing paragraph, (i) the Secured Prepetition Obligations shall constitute allowed claims, not subject to subordination and otherwise unavoidable, for all purposes in the Case and any subsequent chapter 7 case, (ii) the Prepetition Liens on or related to the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, claim, counterclaim, re-characterization, offset of any kind, subordination, and otherwise unavoidable, and (iii) Lender, the Secured Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' respective estates against Lender shall be forever waived and released.

### D. Compliance with Local Rule 4001-2

33. Local Rule 4001-2 requires that certain provisions contained in the financing documents and/or Stipulation and Order be highlighted, and that the Trustee must provide justification for the inclusion of such highlighted provision(s). Though not a traditional cash collateral application, the Trustee believes that certain provisions of Local Rule 4001-2 may be implicated by the Motion, but that the same provides adequate disclosure regarding such provisions. The Trustee has set forth each of the sub-sections of Local Rule 4001-2 and has detailed whether or not this Motion contains or contemplates provisions which would fall within the ambit thereof:

- Local Rule 4001-2(a)(1): This Motion does not contemplate use of Cash Collateral under a budget because the Trustee is not in possession of any Cash Collateral, but outlines the types of carrying cost expenses to be paid in relation to the Property.

14

- <u>Local Rule 4001-2(a)(2)</u>: There are no material conditions to use of Cash Collateral other than the scope of the Carve-Out as set forth in the Motion and further limitations on use related to lien investigation and challenge efforts.

- <u>Local Rule 4001-2(a)(3)</u>: The Trustee is not seeking authority to pay any fees as part of the Motion.

- <u>Local Rule 4001-2(a)(4)</u>: The Motion describes the effects on existing liens of the granting of Replacement Liens provided to Lender.

- <u>Local Rule 4001-2(a)(5)</u>: The Motion describes the proposed Carve-Out in detail.

- <u>Local Rule 4001-2(a)(6)</u>: There are no cross-collateralization provisions, which elevate prepetition debt to administrative expense (or higher) status. The Motion provides that Lender shall receive a lien on all of the Debtor's postpetition property as a form of adequate protection only and post-petition advances of expenses by the Lender shall be added to the Secured Prepetition Obligations of Lender.

- <u>Local Rule 4001-2(a)(7)</u>: The Trustee is not seeking approval of any roll-up provisions.

- <u>Local Rule 4001-2(a)(8)</u>: The Trustee does not believe he is seeking approval of any provision that would limit the Court's power or discretion in a material way, or that would interfere with the exercise of the Trustee's fiduciary duties, or restrict the rights and powers, of the Trustee, Debtor, or any committee or other fiduciary.

- <u>Local Rule 4001-2(a)(9)</u>: Lender is not under any current funding obligation. The Trustee is not seeking approval of any limitation other than the scope of the Carve-Out and limitations on use concerning investigation and challenge.

- <u>Local Rule 4001-2(a)(10)</u>: Not applicable.

- <u>Local Rule 4001-2(a)(11)</u>: Not applicable.

- <u>Local Rule 4001-2(a)(12)</u>: Not applicable.

- <u>Local Rule 4001-2(a)(13)</u>: Not applicable.

- <u>Local Rule 4001-2(a)(14)</u>: Not applicable.

- <u>Local Rule 4001-2(a)(15)</u>: Not applicable.

- <u>Local Rule 4001-2(a)(16)</u>: Not applicable.

- <u>Local Rule 4001-2(a)(17)</u>: Not applicable.

- <u>Local Rule 4001-2(a)(18)</u>: Not applicable.

- <u>Local Rule 4001-2(b)</u>:  Not applicable.

## NOTICE

34. As of the filing of this Motion, no examiner or creditors' committee has been appointed in this Chapter 11 Case. Notice of this Motion will be given to (i) counsel to Lender, Zeichner Ellman & Krause LLP; (ii) the Office of the United States Trustee for the Southern District of New York, Attn: Andrea Schwartz, Trial Attorney, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014; (iii) each of the Debtor's known secured creditors; and (iv) each of the Debtor's twenty (20) largest unsecured creditors. In light of the nature of the relief requested herein, the Trustee submits that no other or further notice need be given.

## NO PRIOR REQUEST

35. No previous request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that the Court "so order" the Stipulation and Order and for such other and further relief as this Court deems just.

Dated: New York, New York
December 26, 2018

        **KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By:   /s/Sean C. Southard
      Sean C. Southard
      Lauren C. Kiss
      200 West 41st Street, 17th Floor
      New York, New York 10036-7203
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: ssouthard@klestadt.com
             lkiss@klestadt.com

*Attorneys for Fred Stevens, Chapter 11 Trustee*