**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                           :
                                                                :    Chapter 11
EMC BRONXVILLE METROPOLITAN, LLC,                               :
                                                                :    Case No. 18-22963 (RDD)
                                              Debtor.            :
-------------------------------------------------------------x


## PLAN OF LIQUIDATION BY CHAPTER 11 TRUSTEE
## <u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>


KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Sean C. Southard

*Attorneys for Fred Stevens, as Chapter 11*
*Trustee*

Dated:  New York, New York
          May 31, 2019

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................... 1

ARTICLE 1 – DEFINITIONS AND RULES OF INTERPRETATION ........................... 1

    A. Definitions ................................................................. 1

    B. Rules of Interpretation ........................................... 9

ARTICLE 2 – PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED ....... 9

    2.1. Claims Not Classified ........................................ 9

        (a) Administrative Expense Claims ................................ 9

        (b) Priority Tax Claims ........................................ 9

        (c) Professional Fee Claims ................................. 10

ARTICLE 3 – CLASSIFICATION OF CLAIMS ......................................... 10

    3.1. Criterion of Class ........................................... 10

    3.2. Class Categories ........................................... 10

ARTICLE 4 – TREATMENT OF CLASSES OF CLAIMS ............................ 10

    4.1. Class 1 (Prepetition Lender Secured Claim) ................. 11

    4.2. Class 2 (Other Secured Claims) ..................... 11

    4.3. Class 3 (Priority Non-Tax Claims) ................... 11

    4.4. Class 4 (General Unsecured Claims) ............... 11

ARTICLE 5 – MEANS OF IMPLEMENTATION OF THE PLAN ............... 12

    5.1. Plan Funding ................................................ 12

    5.2. Appointment of Plan Administrator ........................... 12

        (a) Appointment of Plan Administrator ................... 12

        (b) Bond ................................................... 12

(c) Governance ...................................................................... 12

(d) Succession Matters .......................................................... 12

(e) Funding of Plan Administrator's Activities ........................ 13

(f) Indemnification ................................................................ 13

5.3. Powers and Duties of Plan Administrator .......................... 14

(a) Powers and Duties .......................................................... 14

5.4. Establishment of Reserves and Funds ............................... 15

(a) Administrative Reserve ................................................... 15

(b) Disputed Claim Reserves ............................................... 15

5.5. Preservation of Causes of Action .................................... 15

5.6. Disposition of Records ..................................................... 16

5.7. General Disposition of Assets .......................................... 16

5.8. Administrative Expense Claims Bar Date ........................ 16

5.9. Deadline for Filing Applications Seeking Payment of Professional Fee
Claims ................................................................................. 16

5.10. Execution of Documents to Effectuate Plan .................. 17

5.11. Dissolution Upon Closing of the Case ........................... 17

5.12. Post-Confirmation Reports and Fees ............................. 17

5.13. Insurance Preservation .................................................. 17

ARTICLE 6 – TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED
LEASES .............................................................................. 17

6.1. General Provisions .......................................................... 17

6.2. Notice of Deemed Rejection/Rejection Bar Date ............ 17

6.3. Compensation and Benefit Programs ............................... 18

ARTICLE 7 – CONDITIONS PRECEDENT ................................................................ 18

7.1. Conditions Precedent to Confirmation of the Plan ...................................... 18

7.2. Conditions Precedent to the Effective Date ................................................. 18

7.3. Waiver of Conditions Precedent ................................................................... 19

ARTICLE 8 – INJUNCTIONS; RELEASE; EXCULPATION ...................................... 19

8.1. General Injunctions ...................................................................................... 19

     (a) Injunctions against Interference with Consummation or
     Implementation of Plan ................................................................................ 19

     (b) Plan Injunction ........................................................................................ 19

     (c) Release of Collateral ................................................................................ 19

8.2. Exculpations .................................................................................................. 20

8.3. No Bar to Claims Against Third Parties ....................................................... 20

8.4. All Distributions Received in Full and Final Satisfaction ............................ 20

8.5. No Modification of Res Judicata Effect ........................................................ 20

8.6. No Discharge ................................................................................................. 21

ARTICLE 9 – PROVISIONS GOVERNING DISTRIBUTIONS ................................. 21

9.1. Distributions by Plan Administrator ............................................................. 21

9.2. Indefeasibility of Distributions .................................................................... 21

9.3. Frequency of Distributions ........................................................................... 21

9.4. Payment in U.S. Dollars ................................................................................ 21

9.5. Claims in U.S. Dollars .................................................................................. 21

9.6. Distributions Only on Business Days ............................................................ 21

9.7. Transmittal of Payments and Notices ........................................................... 21

9.8. Record Date for Distributions ......................................................... 22

9.9. Unclaimed Distributions .................................................................. 22

9.10. No Payments of Fractional Cents or Distributions of Less Than Two
Hundred Dollars ....................................................................................... 22

9.11. Setoff and Recoupment .................................................................. 23

9.12. Payment of Taxes on Distributions Received Pursuant to the Plan ............ 23

9.13. Compliance with Tax Withholding and Reporting Requirements .............. 23

9.14. Disputed Distribution .................................................................... 23

9.15. Claims Administration Responsibility ........................................... 23

      (a) Reservation of Rights ........................................................ 23

      (b) Objections to Claims ......................................................... 24

      (c) Filing Objections .............................................................. 24

      (d) Determination of Claims .................................................... 24

9.16. Disallowance of Claims without Further Order of the Court ................ 25

9.17. Disputed Claims .......................................................................... 25

9.18. Limitations on Funding of Disputed Claims Reserve ....................... 26

9.19. Timing of Distributions on Disputed Claims Subsequently Allowed ........ 26

9.20. No Payment or Distribution on Disputed Claims ........................... 26

ARTICLE 10 – PLAN INTERPRETATION, CONFIRMATION AND VOTING ....... 26

10.1. Procedures Regarding Objections to Designation of Classes as Impaired or
Unimpaired ............................................................................................. 26

10.2. Withdrawal and Modification of Plan .......................................... 26

10.3. Governing Law .......................................................................... 27

10.4. Voting of Claims ........................................................................ 27

iv

10.5. Acceptance by Impaired Class .................................................................... 27

10.6. Cram Down ............................................................................................... 27

ARTICLE 11 – RETENTION OF JURISDICTION BY BANKRUPTCY COURT ...... 27

ARTICLE 12 – MISCELLANEOUS PROVISIONS ...................................................... 28

12.1. Headings .................................................................................................... 28

12.2. No Attorneys' Fees ................................................................................... 28

12.3. Notices ....................................................................................................... 28

12.4. Binding Effect ........................................................................................... 29

**INTRODUCTION**

Fred Stevens, as chapter 11 trustee (the "Trustee") of EMC Bronxville Metropolitan LLC, the above captioned debtor (the "Debtor") proposes this plan of liquidation (the "Plan") pursuant to section 1121 of the Bankruptcy Code. The Plan contemplates the (i) approval and eventual closing with respect to Sale of substantially all assets of the Debtor, including the Real Property located in Yonkers, New York, which is the primary asset of this Estate, (ii) the appointment of a Plan Administrator to oversee the wind down and administration of the Debtor pursuant to the Plan, (iii) the distribution of proceeds of Sale in accordance with the agreement reached between the Trustee and the Prepetition Lender who holds a senior Lien upon substantially all assets of the Debtor.

**ARTICLE 1 - DEFINITIONS AND RULES OF INTERPRETATION**

**A.     Definitions**.

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, shall have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

**1.1**     "Administrative Expense Claim" means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(a)(2) including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate and winding down the Debtor's operations during the Case, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the wind-down of its operations during the Case, (c) any Professional Fee Claims, whether fixed before or after the Effective Date, (d) any costs and expenses for the management, maintenance, preservation, sale, or other disposition of any Assets incurred during the Case, and (e) any fees or charges assessed against the Debtor's Estate under 28 U.S.C. § 1930.

**1.2**     "Administrative Expense Claims Bar Date" shall have the meaning set forth in Section 5.8 of the Plan.

**1.3**     "Administrative Reserve" means established by the Plan Administrator as provided in Section 5.7 hereof, with the consent of the Prepetition Lender, as applicable, to fund post-confirmation costs and expenses of the Plan Administrator to complete the wind-down of the Debtor's Estate, which shall be funded by the Debtor's Estate or the Prepetition Lender.

**1.4**     "Allowed" means, when referring to a Claim, a Claim against the Debtor (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules and as to which as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or the Claims Objection Bar Date, or as to which an objection has

been interposed and such Claim or Interest has been allowed in whole or in part by a Final Order, or (ii) a Claim which has been or hereafter is listed by the Debtor in its Schedules as liquidated in an amount and not disputed or contingent, or (iii) a claim or interest that is allowed by this Plan or Final Order of the Bankruptcy Court. For purposes hereof, an "Allowed Claim" shall include any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, provided, however, that (i) a Claim allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered an "Allowed" Claim hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) an "Allowed" Claim shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, unless otherwise specifically provided for in the Plan; and (iii) an "Allowed" Claim shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.5    "Assets" means any and all property of the Estate, including without limitation all property and other interests identified in section 541(a) of the Bankruptcy Code.  Without limiting the foregoing, Assets shall include all of the Debtor's real, personal, tangible and intangible property, wherever located and whether acquired prior to or after the Petition Date, including Cash, real property, personal property, furniture, fixtures, equipment, artwork, intellectual property, accounts, tangibles, intangibles, Causes of Action (including Avoidance Actions), together with the proceeds and products, replacements and accessions thereof.

1.6    "Avoidance Action" means any Causes of Action to avoid or recover a transfer of property of the Estate or an interest of the Debtor in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

1.7    "Ballot" means the form distributed to a Holder of an Impaired Claim on which it is to be indicated whether such Holder accepts or rejects the Plan.

1.8    "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Case.

1.9    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Southern District of New York wherein the Case is pending.

1.10    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, and any Local Rules of the Bankruptcy Court, as amended, in effect and applicable to the Debtor's Case.

**1.11** "Bar Date" means January 21, 2019 (including for governmental entities), unless the Court has set a different date by which a specific Creditor must file a proof of claim, in which case it means, for such specific Creditor, such different date set by the Court.

**1.12** "Business Day" means any day other than a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**1.13** "Cash" means legal tender of the United States of America.

**1.14** "Causes of Action" means any and all Claims, rights, actions, chose in action, suits, and causes of action belonging to the Trustee, Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to or after the Petition Date, and in each case whether known or unknown, in law, equity or otherwise, including Avoidance Actions.

**1.15** "Case" means the case concerning the Debtor, commenced involuntarily on June 22, 2018, and converted to a case under chapter 11 of the Bankruptcy Code, administered under case number 18-22963(RDD) in the Bankruptcy Court.

**1.16** "Claim" means, as defined in Bankruptcy Code section 101(5): (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.17** "Claim Transfer Document" shall have the meaning set forth in Section 9.8 of this Plan.

**1.18** "Claims Objection Bar Date" means, unless otherwise extended by Order of the Court, the first Business Day that is 180 days after the Effective Date.

**1.19** "Class" means a category of Claims described in Article 3 of the Plan.

**1.20** "Collateral" means any property or interest in property of the Estate of the Debtor subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.21** "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.22** "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

**1.23** "Creditor" means any Person holding a Claim against the Debtor or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor, that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

**1.24** "Deficiency Claim" means that portion of any Allowed Claim held by a Prepetition Bond Trustee or Holders of Other Secured Claims that exceeds the value distributed on account of such Allowed Claim pursuant to the treatment of such Allowed Claim in Class 1, 2, 3, or 4 in the Plan.

**1.25** "Disallowed" means, when referring to a Claim, a Claim (including a Scheduled Claim), or any portion of a Claim, which has been disallowed or expunged by a Final Order.

**1.26** "Disclosure Statement" means the disclosure statement for the Plan, and all exhibits annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

**1.27** "Disclosure Statement Approval Order" means the Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

**1.28** "Disputed" means, with respect to a Claim against the Debtor, the extent to which the allowance of such Claim is the subject of a timely objection, complaint or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn with prejudice, or determined by a Final Order.

**1.29** "Disputed Claims Reserve" means the segregated accounts established by the Plan Administrator, as necessary, consistent with Article 9.17 of the Plan.

**1.30** "Distribution" means any distribution made pursuant to the terms of this Plan.

**1.31** "Distribution Agent" means the Plan Administrator or such other third party agent engaged by the Plan Administrator to make Distributions under the Plan.

**1.32** "Distribution Date" means any date on which a Distribution is made to holders of Allowed Claims under this Plan.  The first Distribution shall occur as soon as practicable on or after the Effective Date.

**1.33**    "<u>Distribution Record Date</u>" shall have the meaning set forth in Section 9.8 of this Plan

**1.34**    "<u>Effective Date</u>" means the earlier of (a) the first Business Day after the entry of the Confirmation Order that (i) the conditions to effectiveness of the Plan set forth in Section 7.2 of the Plan have been satisfied or otherwise waived, and (ii) the effectiveness of the Confirmation Order has not been stayed, or (b) such other date following the Confirmation Date that the Trustee, in consultation with the Prepetition Lender and in his reasonable discretion, designates.

**1.35**    "<u>Estate</u>" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Petition Date.

**1.36**    "<u>Estate Carve-Out</u>" means the agreed carve-out from Prepetition Lender's otherwise valid claims and liens in favor of the Estate, including its costs of administration set forth in paragraph 6 of the Prepetition Lender Claim Stipulation and Order.

**1.37**    "<u>Fee Application Deadline</u>" shall have the meaning set forth in Section 5.9 of the Plan.

**1.38**    "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; <u>provided</u>, <u>however</u>, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; <u>provided</u>, <u>further</u>, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

**1.39**    "<u>General Unsecured Claim</u>" means any Unsecured Claim against the Debtor that is not an Administrative Expense Claim, Priority Tax Claim, or Priority Non-Tax Claim. For the avoidance of doubt, any Deficiency Claim shall be a General Unsecured Claim.

**1.40**    "<u>Holder</u>" means any person that holds a Claim against the Debtor.

**1.41**    "<u>Impaired</u>" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.42**    "<u>Insurance Policies</u>" means any policy of insurance and any agreements relating thereto that may be available to provide coverage for Claims against the Debtor, its officers, directors, trustees, or any other Person.

**1.43**    "Lien" means a "lien" as defined by section 101(37) of the Bankruptcy Code.

**1.44**    "Other Secured Claims" means Secured Claims other than the Prepetition Lender Claims.

**1.45**    "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or governmental unit or subdivision thereof or other entity.

**1.46**    "Petition Date" means June 22, 2018, the date upon which the Petitioning Creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code and the instant Case was commenced.

**1.47**    "Plan" means this Plan and any exhibits or schedules annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

**1.48**    "Plan Administrator" means Fred Stevens, or such other person or entity appointed in accordance with the Plan.

**1.49**    "Plan Administrator Agreement" means the agreement between the Debtor and the Plan Administrator.

**1.50**    "Plan Supplement" means the supplement to the Plan that includes documents and instruments required to implement the Plan, including, without limitation, the Plan Administrator Agreement, which shall be filed with the Bankruptcy Court not later than seven (7) days before the deadline to object to confirmation of the Plan established by the Disclosure Statement Approval Order.

**1.51**    "Post-Confirmation Expenses" means the administrative expenses accrued following the Effective Date, including without limitation, all fees and expenses of the Plan Administrator, and any professionals retained by the Plan Administrator.

**1.52**    "Prepetition Lender" means Popular Bank, f/k/a Banco Popular North America.

**1.53**    "Prepetition Lender Claim Stipulation and Order" means the "So Ordered" Stipulation and Order: (I) Establishing Stipulations Regarding the Extent, Validity and Priority of Lender's Liens, and Deadlines For Commencing Any Challenges; (II) Granting Adequate Protection to Lender to the Extent the Trustee Uses and of its Cash Collateral; (III) Proving for a Carve-Out of Lender's Liens in Connection with the Costs and Expenses of the state In Liquidating the Debtor's Assets; and (IV) Granting Related Relief entered by the Bankruptcy Court on January 29, 2019.

**1.54** "Prepetition Lender Secured Claim" means the Claim of the Prepetition Lender in the Allowed amount of $21,000,000.00, which is secured by Liens on substantially all assets of the Debtor, including the Real Property.

**1.55** "Priority Non-Tax Claim" means an Unsecured Claim, other than an Administrative Expense Claim, a Priority Tax Claim, or a General Unsecured Claim, which is entitled to priority in payment under sections 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.56** "Priority Tax Claim" means an Unsecured Claim or a portion of an Unsecured Claim of a governmental unit against the Debtor which is entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.57** "Professional Fee Claim" means any Claim of a professional retained in the Case pursuant to sections 327 or 1103 of the Bankruptcy Code, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is allowed by the Bankruptcy Court pursuant to sections 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**1.58** "Professionals" means those professional persons, including lawyers, financial advisors, and accountants and other professionals retained by the Trustee.

**1.59** "Purchase Price" means the amount of consideration paid to Trustee, as seller of the Real Property by the Successful Purchaser.

**1.60** "Real Property" means the Debtor's real property located at 759 Palmer Road, Yonkers, New York (Block 5368, Lot 48), which shall be sold as soon as practicable following the Effective Date.

**1.61** "Sale" means the Trustee's intended sale of the Sale Property, including the Real Property and other personal property owned by the Debtor free and clear of liens, claims and encumbrances pursuant to Order of the Bankruptcy Court.

**1.62** "Sale Property" means the Real Property and other personal property owned by the Debtor to be sold to Successful Purchaser, which for the avoidance of doubt, excludes Causes of Action and Necessary Records.

**1.63** "Scheduled Claim" means a Claim that is listed in the Debtor's Schedules.

**1.64** "Schedules" means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statement of financial affairs, and other schedules and statements filed by the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1007, and any amendments thereto.

**1.65**    "Secured Claim" means a Claim secured by a Lien, as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a judicial lien as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

**1.66**    "Successful Purchaser" means the entity that is selected by Trustee and approved by the Bankruptcy Court as having offered the highest and best bid for the Sale Property and who actually closes on the Sale.

**1.67**    "Tax Information" shall have the meaning set forth in Section 9.12(a) of this Plan.

**1.68**    "Tax Information Request" shall have the meaning set forth in Section 9.12(b) of this Plan.

**1.69**    "Unclaimed Distribution" means any Distribution that is unclaimed after ninety (90) days following any Distribution Date. Unclaimed Distributions shall include, without limitation: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (ii) funds representing checks which have not been paid; and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a valid address.

**1.70**    "Unsecured Claim" means any Claim which is not secured by an offset or "lien," as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property. For the avoidance of doubt, the term "Unsecured Claim" includes any Deficiency Claim.

**1.71**    "Unsecured Creditor Fund" means the account established and maintained by the Plan Administrator for the benefit of Holders of Allowed Claims in Classes 3 and 4, which shall be funded with any net funds available after expenses of administration and payment of senior claims from the Estate Carve-Out, plus any net proceeds of Causes of Action, if any.

**1.72**    "U.S. Trustee" means any and all representatives and employees of the Office of the United States Trustee for the Southern District of New York.

**1.73**    "Voting Record Date" means June 28, 2019.

**B.  Rules of Interpretation**.

For purposes of this Plan: (a) where appropriate in the relevant context, each term, whether stated in the singular or the plural, will include both the singular and the plural;

8

(b) unless otherwise provided in the Plan, any references in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in the Plan, any reference in the Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) unless otherwise specified herein, any reference to a Person as a holder of a Claim includes that Person's successors and assigns; (e) unless otherwise specified, all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan; (f) the words "herein", "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the Plan. To the extent that the Plan is inconsistent with the Disclosure Statement or provisions of the documents comprising the Plan Supplement, unless such document specifically states otherwise, the provisions of the Plan shall be controlling.

## ARTICLE 2 - PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED

### 2.1    Claims Not Classified.

No class is designated for Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims.

(a)    Administrative Expense Claims.

All Allowed Administrative Expense Claims, other than Professional Fee Claims, shall be paid by the Plan Administrator from the Administrative Reserve, in full, in Cash, in such amounts as are incurred in the ordinary course of the liquidation of the Debtor, or in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's liquidation or (c) as may be agreed upon between the holder of any such Administrative Expense Claim and the Debtor.  In the event there exists any Disputed Administrative Expense Claims on the Effective Date, the Plan Administrator shall at all times hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Administrative Expense Claims. Administrative Expense Claims are not Impaired by the Plan.

(b)    Priority Tax Claims.

On the Effective Date, or as soon thereafter as is reasonably practical, in full and final satisfaction of such Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Priority Tax Claim, or (b) such other treatment as to which the Debtor and the holder of such Allowed Priority Tax Claim shall have agreed upon in writing.  In the event any Disputed Priority Tax Claims exist on the Effective Date, the Debtor shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Priority Tax Claims until such dispute is resolved

consensually or by order of the Bankruptcy Court.  Priority Tax Claims are not Impaired by the Plan.

      (c)      <u>Professional Fee Claims</u>.

The Plan Administrator shall pay all Professional Fee Claims as soon as practicable after a Final Order has awarded such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.9 hereof.  In the event any Disputed Professional Fee Claims exist on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Professional Fee Claims until such dispute is resolved consensually or by order of the Bankruptcy Court. Professional Fee Claims are not Impaired by the Plan.

## ARTICLE 3 - CLASSIFICATION OF CLAIMS

### 3.1    <u>Criterion of Class</u>.

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is in a different Class or Classes to the extent that the remainder of the Claim qualifies within the description of the different Class or Classes.

### 3.2    <u>Class Categories</u>.

The following classes of Claims are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes shall be mutually exclusive:

| Class | Claim | Treatment | Status | Voting Rights |
|-------|-------|-----------|--------|---------------|
| Class 1 | Prepetition Lender Secured Claim | Plan § 4.1 | Impaired | Entitled to Vote |
| Class 2 | Other Secured Claims | Plan § 4.2 | Impaired | Entitled to Vote |
| Class 3 | Priority Non-Tax Claims | Plan § 4.3 | Impaired | Deemed to Accept |
| Class 4 | General Unsecured Claims | Plan § 4.4 | Impaired | Entitled to Vote |
|  |  |  |  |  |

## ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS

The following treatment of and consideration to be received by holders of Allowed Claims pursuant to this Plan shall be in full and final satisfaction of such Allowed Claims.

10

**4.1     Class 1 (Prepetition Lender Secured Claim)**.

Holder of the Allowed Class 1 Claim shall receive one or more distributions on and after the Effective Date after the Plan Administrator establishes reserves for the Estate Carve-Out in accordance with the Prepetition Lender Claim Stipulation and Order and as otherwise modified by the terms of this Plan. Allowed Class 1 Prepetition Lender Secured Claim is Allowed pursuant to the Prepetition Lender Claim Stipulation and Order, but in the reduced amount of $21,000,000.00. The Liens that secure the Prepetition Lender Secured Claim are valid, binding, enforceable, and perfected liens with priority over any and all Other Secured Claims and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any Person. Any Deficiency Claim which may arise on account of the lack of Collateral or otherwise resulting from the aforesaid treatment shall be treated as a Class 4 General Unsecured Claim; provided however, that before Prepetition Lender shall participate in recovery on its Deficiency Claim under Class 4, the other holders of Allowed Class 4 Claims shall receive distribution of at least ten percent (10%).

**4.2     Class 2 (Other Secured Claims)**.

On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Other Secured Claim shall receive (i) the net proceeds, if any, of the sale or other disposition of the Assets on which such Holder has a Lien, after payment, in full, of the Class 1 Claim secured by such Assets; or (ii) such other, less favorable treatment as may be agreed to in writing by the holder of such Allowed Other Secured Claim and the Plan Administrator.  Any Deficiency Claim which may arise on account of the lack of Collateral or otherwise resulting from the aforesaid treatment shall be treated as a Class 4 General Unsecured Claim.

**4.3     Class 3 (Priority Non-Tax Claims)**.

On the Effective Date, or as soon thereafter as is reasonably practical, in full and final satisfaction of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive (a) one or more distributions on a *pro rata* basis, up to one hundred percent (100%) of such Allowed Priority Non-Tax Claim, in full and final satisfaction of such Allowed Priority Non-Tax Claim from the Unsecured Creditor Fund, if any remains after satisfaction of senior claims (b) such other treatment as to which the Debtor and the holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing.

**4.4     Class 4 (General Unsecured Claims)**.

Each Holder of an Allowed General Unsecured Claim shall receive one or more distributions on a *pro rata* basis, up to one hundred percent (100%) of such Allowed General Unsecured Claim, in full and final satisfaction of such Allowed General Unsecured Claim from the Unsecured Creditor Fund, if any remains after satisfaction of

senior claims in Class 3.

## ARTICLE 5 - MEANS OF IMPLEMENTATION OF THE PLAN

### 5.1    Plan Funding.

(a)    As a condition to effectiveness of this Plan, the Trustee must close on the Sale of Real Property.  The Sale of Real Property is intended to be exempt from otherwise applicable transfer taxes in accordance with Section 1146(a) of the Bankruptcy Code.

(b)    The Plan shall be funded by the net proceeds of Sale of the Sale Property. The proceeds of Sale shall be distributed substantially in accordance with the Prepetition Lender Claim Stipulation and Order, which provides that before payment is made to Prepetition Lender from such proceeds, the Trustee must receive and reserve for the Estate Carve-Out, including for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest pursuant section 3717 of title 31 of the United States Code, (ii) any allowed commissions and disbursement of the Trustee not to exceed the limitations imposed by Section 326 of the Bankruptcy Code (as further limited in the same) (iv) the payment of allowed professional fees, commissions and disbursements incurred by the professionals or brokers retained by the Trustee for reasonable and necessary case matters, other than investigation and prosecution of any Causes of Action, (v) closing costs and title charges necessary to close title on the sale of the Sale Property, and (vi) $200,000 to be retained by the Trustee and used in the administration of the estate..

### 5.2    Appointment of Plan Administrator.

(a)    Appointment of Plan Administrator. The Confirmation Order shall provide for the appointment of the Plan Administrator. The Plan Administrator shall be deemed the Estate's exclusive representative in accordance with § 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under §§ 704 and 1106 of the Bankruptcy Code.

(b)    Bond.   The Plan Administrator shall serve without a bond.

(c)    Governance. The Plan Administrator shall be governed by the Plan and the Plan Administrator Agreement.

(d)    Succession Matters.   In the event the Plan Administrator dies, is terminated, or resigns for any reason, any party in interest may designate a successor. Upon nomination and motion by any party in interest, the Bankruptcy Court may appoint a successor Plan Administrator from such nominees. Such successor Plan Administrator shall be deemed to succeed the Plan Administrator in all respects, without need for further order of the Bankruptcy Court. In the event of resignation or removal of the Plan Administrator, the departing Plan Administrator shall promptly (a) execute and deliver

12

such documents, instruments and other writings as reasonably requested by the successor Plan Administrator or as ordered by the Bankruptcy Court; (b) turn over to the successor Plan Administrator all property of the Debtor's Estate in his or her possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Debtor; and (c) otherwise assist and cooperate in affecting the assumption of his or her obligations and functions by the successor Plan Administrator. The successor Plan Administrator may, in his or her discretion, retain such professionals as he or she deems necessary, including the Professionals of the departing Plan Administrator. If the Plan Administrator is replaced, the Professionals retained by the Plan Administrator shall be entitled to payment of their reasonable, undisputed fees and expenses from the Debtor's Estate through the date of the Plan Administrator's replacement.

(e)    Funding of Plan Administrator's Activities. The Trustee shall establish a reasonable wind-down budget (the "Wind-Down Budget") on or before the Effective Date. The duties and obligations of the Plan Administrator hereunder are subject to the Wind-Down Budget.

(f)    Indemnification. The Plan Administrator and his or her designees, employees or professionals or any duly designated agent or representative of the Plan Administrator shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court. The Plan Administrator may, in connection with the performance of his functions, and in his sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys, accountants, financial advisors and agents, or any Final Order of the Bankruptcy Court. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and his determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court. The Debtor's Estate shall indemnify and hold harmless the Plan Administrator and his or her designees and Professionals, and all duly designated agents and representatives (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; provided however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

## 5.3    Powers and Duties of Plan Administrator.

(a)    Powers and Duties. On the Effective Date, the Plan Administrator shall succeed to all of the rights of the Debtor and the Estate, with all powers necessary to protect, conserve, and liquidate all Estate Assets, including, without limitation, control

over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Estate Assets that, prior to the Effective Date, belonged to the Debtor pursuant to applicable law. The powers and duties of the Plan Administrator shall include, without further order of the Court, except where expressly stated otherwise, the rights:

    i.    to invest Cash in accordance with § 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims and pay taxes and other obligations owed by the Debtor in connection with the wind-down of the Estate in accordance with the Plan;

    ii.    to engage attorneys, consultants, agents, employees and all professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

    iii.    to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Debtor's Estate;

    iv.    to dispose of, and deliver title to or otherwise realize the value of, all the remaining Assets;

    v.    to coordinate the storage and maintenance of the Debtor's books and records;

    vi.    to oversee compliance with the Debtor's accounting, finance and reporting obligations;

    vii.    to prepare monthly operating reports and financial statements and United States Trustee quarterly reports;

    viii.    to oversee the filing of final tax returns, audits and other corporate dissolution documents only if required by this Plan;

    ix.    to investigate and prosecute any and all Causes of Action on behalf of the Debtor and its Estate, including without limitation, Avoidance Actions, that the Plan Administrator, in his sole and absolute discretion, believes will result in a net benefit to holders of Allowed Claims and Classes 3 and 4;

    x.    to object to Claims against the Debtor;

    xi.    to compromise and settle Claims by and against the Debtor;

    xii.    to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Debtor.

    xiii.    to implement and/or enforce all provisions of the Plan;

14

xiv.    to implement and/or enforce all agreements entered into prior to the Effective Date;

xv.    abandon any Assets without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate;

xvi.    to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan;

The duties and obligations of the Plan Administrator hereunder are subject to the Wind-Down Budget.

### 5.4    Establishment of Reserves and Funds.

(a) Administrative Reserve. On or prior to the Effective Date, the Administrative Reserve shall be established by the Trustee.  If the Plan Administrator determines that additional funding of the Administrative Reserve is required, from time to time, following the Effective Date, such funding shall be made from available Cash, if any. The Administrative Reserve shall be used to pay the Post-Confirmation Expenses, including, without limitation, costs and expenses of professionals or other advisors retained by the Plan Administrator.

(b) Disputed Claim Reserves. As soon as practicable following the Effective Date, Disputed Claim Reserves shall be established by the Plan Administrator, if and as required; provided, however, that the Plan Administrator shall have no obligation to fund the Disputed Claim Reserves until, at the latest, immediately prior to the making of a Distribution to holders of Allowed Claims. The Disputed Claim Reserves shall be funded from available Cash in the Debtor's Estate, in an amount equal to the amount holders of Disputed Claims would have otherwise been entitled but for the dispute. The assets in the Disputed Claim Reserves shall be held separately from other assets held by the Plan Administrator, as applicable, subject to an allocable share of all expenses and obligations, on account of Disputed Claims. Funds shall be removed from the Disputed Claims Reserves as the Disputed Claims are resolved, which funds shall be distributed as provided in section 9.19 of the Plan. Notwithstanding any other provision of the Plan to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Plan Administrator may treat any assets allocable to, or retained on account of, the Disputed Claims Reserves as held by one or more discrete entities for federal, and applicable state, local or other, income tax purposes, and may determine that such entity or entities shall constitute "disputed ownership funds" under, and may make the election permitted by, Treasury Regulation 1.468B-9, or any successor provision thereto. All recipients of Distributions under the Plan shall be bound by, and shall report consistent with, such income tax treatment.

### 5.5    Preservation of Causes of Action.

Except as otherwise provided in this Plan or in any contract, instrument, release or agreement entered into in connection with this Plan, in accordance with section 1123(b)

of the Bankruptcy Code, all Claims or Causes of Action that the Debtor, the Trustee, or the Estate may have against any person or entity are preserved, including without limitation, any and all Causes of Action under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code. The Plan Administrator shall have standing to pursue any and all Causes of Action pursuant to this Plan.

    **5.6**    **Disposition of Records**.

The Plan Administrator shall dispose of the Debtor's books and records as he determines in his reasonable discretion.

    **5.7**    **General Disposition of Assets**.

Pursuant to section 1123(a)(5) of the Bankruptcy Code and subject to the terms of this Plan, as soon as is reasonably practicable following the Effective Date, the Plan Administrator shall sell or otherwise dispose of, and liquidate to or otherwise convert to Cash, any non-Cash Assets in such manner as the Plan Administrator shall determine is in the best interests of the Estate.

Prior to the Effective Date, the Trustee shall close on the Sale of the Real Property.

    **5.8**    **Administrative Expense Claims Bar Date**.

With the exception of Professional Fee Claims, persons asserting and Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after notice of the Effective Date has been mailed (the "Administrative Expense Claims Bar Date"). No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Expense Claim that fails to file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment as against the Debtor, its Estate, the Trustee and Plan Administrator.

    **5.9**    **Deadline for Filing Applications For Payment of Professional Fee Claims**.

All parties seeking payment of Professional Fee Claims arising prior to the Effective Date must file with the Bankruptcy Court a final application and/or an application for payment of reasonable fees and expenses on the date that is 30 days after notice of the Effective Date has been mailed (the "Fee Application Deadline"). Any Professional failing to file and serve such application on or before the Fee Application Deadline shall be forever barred from asserting any such right to payment against the Debtor, its Estate, the Trustee and the Plan Administrator.

**5.10** **Execution of Documents to Effectuate Plan**.

From and after the Effective Date, the Plan Administrator shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. Entry of the Confirmation Order shall authorize the Plan Administrator to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action.

**5.11** **Dissolution Upon Closing of the Case**. Following the Effective Date, the Debtor, through the activities of the Plan Administrator, shall continue in existence for the purposes of, among other things, completing the liquidation of its Assets, winding up its affairs and filing appropriate tax returns. Upon the entry of an order closing this Case, the Debtor shall be deemed dissolved for all purposes. No other actions or filings or payments shall be required in furtherance of such dissolution.

**5.12** **Post-Confirmation Reports and Fees**. Following the Effective Date and until the Case is closed, not less than once every ninety (90) days, the Plan Administrator shall file all post-Effective Date reports required during such periods and shall pay from the Administrative Reserve all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. §1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

**5.13** **Closing of Case**. Notwithstanding anything to the contrary contained herein, after confirmation of the Plan, in the event that the Plan Administrator, in his reasonable business judgment, determines that the remaining value of Assets in his possession and control are insufficient to permit a minimal distribution to holders of Allowed Claims in Classes 3 and/or 4 in light of the costs of administration and accrued expenses, the Plan Administrator may seek to close the Chapter 11 Case and render final report on notice to holders of then Allowed Claims. For the further avoidance of doubt, the Plan Administrator may donate to a qualified not-for-profit charity of his choosing, Assets of value equal to less than $10,000 or as may otherwise be required to fully administer this Estate and permit closing of the Case.

**5.14** **Insurance Preservation**.

Nothing in this Plan shall diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtor, Trustee or any other Person.

## ARTICLE 6 - TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES

**6.1** **General Provisions**.

All executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or

applicable provisions of the Bankruptcy Code, or (ii) has expired or otherwise terminated pursuant to its terms.

### 6.2    Notice of Deemed Rejection/Rejection Bar Date.

Any party to an executory contract or unexpired lease that is rejected in accordance with Section 6.1 shall file a proof of Claim for damages from such rejection no later than thirty (30) days after the Effective Date.  The failure to timely file a proof of Claim shall be deemed a waiver of any Claim in connection with the rejection of such contract or lease.

### 6.3    Compensation and Benefit Programs.

To the extent not previously terminated, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies and programs of the Debtor applicable generally to its employees or officers in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans and life, accidental death and dismemberment insurance plans, shall be terminated as of the Effective Date.

## ARTICLE 7 - CONDITIONS PRECEDENT

### 7.1    Conditions Precedent to Confirmation of the Plan.

The following conditions must be satisfied, or otherwise waived in accordance with Section 7.3, on or before the Confirmation Date:

(a)    The Disclosure Statement Approval Order shall have been entered and shall have become a Final Order; and

(b)    The entry of the Confirmation Order shall be in form and substance reasonably satisfactory to the Trustee, and shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud; (iv) approve the Plan Administrator Agreement; and (v) establish the Administrative Expense Claims Bar Date.

### 7.2    Conditions Precedent to the Effective Date.

The Effective Date shall not occur and no obligations under the Plan shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 7.3 hereof, on or before the Effective Date:

(a)    The closing of the sale of the Real Property shall have occurred.

(b)     The Confirmation Order shall have been entered and no stay of its effectiveness of the same shall have been issued within fourteen (14) days following the entry of the Confirmation Order;

(c)     The Confirmation Order shall have authorized and approved the appointment of the Plan Administrator; and

(d)     The Debtor shall have sufficient Cash on hand to pay all Administrative Expense Claims and fund the Administrative Reserve.

**7.3     Waiver of Conditions Precedent**.

Each of the conditions precedent in Sections 7.1 and 7.2 hereof may be waived or modified without further Court approval, in whole or in part, but only with the consent of the Trustee.

## ARTICLE 8 - INJUNCTION; RELEASES; EXCULPATION

**8.1     General Injunctions**.

**The following provisions shall apply and shall be fully set forth in the Confirmation Order.**

**(a)     Injunctions Against Interference with Consummation or Implementation of Plan. All holders of Claims shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Trustee, the Debtor, the Estate, or the Plan Administrator with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and Distributions to be made hereunder.**

**(b)     Plan Injunction. Except as otherwise specifically provided for by this Plan, as of and from the Effective Date, all Persons shall be enjoined from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any encumbrance of any kind; and/or (iii) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the Trustee, the Debtor, the Estate or the Plan Administrator, to the fullest extent authorized or provided by the Bankruptcy Code.**

**(c)     Release of Collateral. Except as expressly provided otherwise in the Plan, unless a Holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan, each Holder of (A) an Allowed Secured Claim; and (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (x) turn over and release to the Debtor any and all property that secures or purportedly secures such Claim; and (y) execute such documents and instruments as the Debtor requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title and interest in such property shall revert to the Debtor, free and clear of all Claims against the Debtor, including (without limitation) liens, charges, pledges, encumbrances and/or security interests of any kind. No Distribution hereunder shall be made to or on behalf of any Holder**

19

of such Claim unless and until such Holder executes and delivers to the Debtor such release of liens. Any such Holder that fails to execute and deliver such release of liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a Holder of a Disputed Claim shall not be required to execute and deliver such release of liens until the time such Claim is Allowed or Disallowed.

**8.2     Exculpation.**  As of the Confirmation Date, the Trustee and his professionals (including professional firms and individuals within such firms) shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  To the fullest extent permitted by section 1125(e) of the Bankruptcy Code, the Trustee and his professionals (including professional firms and individuals within such firms) (acting in such capacity), shall not have or incur any liability to any holder of any Claim or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Case, the Disclosure Statement, the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Case, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, including, without limitation, the steps taken to effectuate the transactions described in Article 5 of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions constituting fraud, willful misconduct or gross negligence as determined by a Final Order; and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**8.3     No Bar to Claims Against Third Parties**.

Except as set forth herein, Holders of Claims against the Debtor are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtor.

**8.4     All Distributions Received in Full and Final Satisfaction**.

Except as otherwise set forth herein, all payments, all Distributions to be made in accordance with the Plan on account of Claims, and all rights conferred under this Plan shall be received in full and final satisfaction of the Estate's obligations for such Claims as against the Debtor, its property and the Estate.

**8.5     No Modification of Res Judicata Effect**.

The provisions of this Article 8 are not intended, and shall not be construed, to modify the res judicata effect of any order entered in the Case, including, without limitation, the Confirmation Order and any order finally determining Professional Fee Claims to any Professional.

20

**8.6**    **No Discharge**.

Pursuant to Bankruptcy Code § 1141(d)(3), the Confirmation Order will not discharge the Debtor of any debts.

## ARTICLE 9 - PROVISIONS GOVERNING DISTRIBUTIONS

**9.1**    **Distributions by Plan Administrator**.

(a)    <u>Generally</u>. The Plan Administrator shall make Distributions on account of Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, Class 1, Class 2 (Other Secured Claims) and Class 3 (Priority Non-Tax Claims) and Class 4 (General Unsecured Claims) in accordance with Article 4 of the Plan. The Plan Administrator may use the services of a third party to aid in the Distributions required to be made under this Plan, including the Distribution Agent.

**9.2**    **Indefeasibility of Distributions**. All Distributions made under the Plan shall be indefeasible.

**9.3**    **Frequency of Distributions**.

The Plan Administrator shall make distributions not less than once per year, or such other times that he determines appropriate, in his discretion.

**9.4**    **Payment in U.S. Dollars**.

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on domestic bank(s) selected by the Plan Administrator in accordance with the Plan or by wire transfer from a domestic bank.

**9.5**    **Claims In U.S. Dollars**.

Any Claims asserted in foreign currencies shall be converted to United States Dollars in accordance with the prevailing exchange rates published by the Wall Street Journal on the Confirmation Date.

**9.6**    **Distributions Only on Business Days**.

Notwithstanding the foregoing provisions, if any Distribution called for under this Plan is due on a day other than a Business Day, then such Distribution shall instead be due the next Business Day.

**9.7**    **Transmittal of Payments and Notices**.

Except as otherwise provided in the Plan, all Distributions shall be made to the holder of a Claim by regular first-class mail, postage prepaid, in an envelope addressed to such holder at the address listed on its proof of Claim filed with the Bankruptcy Court or,

if no proof of Claim was filed, (i) at the address listed on the Debtor's Schedules, or (ii) at such address that a holder of a Claim provides to the Plan Administrator after the Effective Date in writing at least fifteen (15) business days prior to a Distribution Date. The Plan Administrator shall have no duty or obligation to ascertain the mailing address of any holder of a Claim other than as set forth herein. The date of payment or delivery shall be deemed to be the date of mailing.   Payments made in accordance with the provisions of this Section shall be deemed made to the holder regardless of whether such holder actually receives the payment.

### 9.8    **Record Date for Distributions**.

Except as otherwise provided in a Final Order of the Bankruptcy Court, transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 with appropriate filings ("Claim Transfer Document") made on or before the Effective Date (the "Distribution Record Date") shall be treated as the holders of those Claims for all purposes of this Plan, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Record Date.  The Plan Administrator shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. In making a Distribution with respect to any Claim, the Plan Administrator shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the proof of claim filed with respect to such Claim, on the Debtor's Schedules as the holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Record Date.

### 9.9    **Unclaimed Distributions**.

Unclaimed Distributions (including Distributions made by checks that fail to be cashed or otherwise negotiated within ninety (90) days after the Distribution Date or which Distributions are returned to the Plan Administrator as undeliverable to the addresses of record as of the Record Date, shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distribution(s) shall be deemed forfeited and expunged without any further action or order of the Bankruptcy Court.   Any such Unclaimed Distributions shall, as soon as is practicable, be redistributed pursuant to the provisions of the Plan.

### 9.10    **No Payments of Fractional Cents or Distributions of Less Than One Hundred Dollars**.

(a)    Notwithstanding any provision to the contrary herein, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan.   Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with a half-penny or less being rounded down and fractions in excess of half of a penny being rounded up.

(b)    Notwithstanding any provision to the contrary herein, for purposes of administrative convenience, no Distribution of less than Two Hundred Dollars ($200) shall be made pursuant to the Plan. Whenever any Distribution of less than Two Hundred

Dollars ($200) under the Plan would otherwise be required, such funds will be retained by the Plan Administrator, as applicable, for the account of the recipient until such time that successive Distributions aggregate to Two Hundred Dollars ($200), at which time such payment shall be made, and if successive Distributions do not ever reach Two Hundred Dollars ($200) in the aggregate, then such Distributions shall revert to the Estate and redistributed in accordance with the Plan.

   **9.11** <u>**Setoff and Recoupment**</u>.  Except as otherwise provided in the Plan, the Plan Administrator may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Plan Administrator may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Plan Administrator of any right of setoff or recoupment against the holder of any Claim.

   **9.12** <u>**Payment of Taxes on Distributions Received Pursuant to the Plan**</u>.

   (a) Notwithstanding any provision to the contrary herein, as a condition to payment of any Distribution to a Creditor under this Plan, each Creditor shall provide a valid tax identification or social security number (collectively the "<u>Tax Information</u>") for purposes of tax reporting by the Plan Administrator.  All Persons that receive Distributions under the Plan shall be responsible for reporting and paying, as applicable, any taxes on account of their Distributions.

   (b) At such time as the Plan Administrator believes that Distributions to a particular Class of Claims is likely, the Plan Administrator shall request Tax Information in writing from Creditors (the "<u>Tax Information Request</u>").  Any Creditor who fails to respond to Tax Information Request within ninety (90) days from the date posted on the Tax Information Request, shall forfeit all Distributions such Creditor may otherwise be entitled to under this Plan and such forfeited funds will revert to the Estate, as applicable, to be disbursed in accordance with the terms and priorities established in this Plan.

   **9.13** <u>**Compliance With Tax Withholding and Reporting Requirements**</u>.

   With respect to all Distributions made under the Plan, the Trustee and the Plan Administrator will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

   **9.14** <u>**Disputed Distribution**</u>.

   If a dispute arises as to the identity of a holder of an Allowed Claim who is to receive a Distribution, the Plan Administrator may, in lieu of making such Distribution to such holder, hold such amount until the dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the parties to such dispute.

   **9.15** <u>**Claims Administration Responsibility**</u>.

   (a) <u>Reservation of Rights</u>.  Unless a Claim is specifically Allowed prior to or

after the Effective Date, prior to the Effective Date, the Trustee, and after the Effective Date, the Plan Administrator, reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, or Priority Non-Tax Claims, liens and security interests (except as to the Liens on the Collateral securing the Prepetition Lender Secured Claim, which rights were waived by the Debtor pursuant to the Prepetition Lender Claim Stipulation and Order), whether under the Bankruptcy Code, other applicable law or contract.  The failure to object to any Claim prior to the Effective Date shall be without prejudice to the Plan Administrator's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of the Claim.

(b)    Objections to Claims.  Prior to the Effective Date, the Trustee shall be responsible for pursuing any objection to the allowance of any Claim.  From and after the Effective Date, the Plan Administrator may dispute, object to, compromise or otherwise resolve all Claims.  Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims shall be filed and served no later than one hundred eighty (180) days after the Effective Date, provided that the Plan Administrator may request (and the Bankruptcy Court may grant) an extension of time by filing a motion with the Bankruptcy Court.

(c)    Filing Objections.  An objection to a Claim shall be deemed properly served on the claimant if the Trustee or Plan Administrator, as applicable, effect service of any such objection in accordance with Rule 3007 of the Bankruptcy Rules by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's proof of claim at least thirty (30) days prior to the hearing thereon. The Trustee or the Plan Administrator, as applicable, may also effectuate service of an objection to a claim: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, to the signatory on the proof of claim or interest or other representative identified on the proof of claim or interest or any attachment thereto or; (iii) by first class mail, postage prepaid, on counsel that has appeared on the behalf of the claimant in the Case.

(d)    Determination of Claims.  Except as otherwise agreed by the Trustee or the Plan Administrator, any Claim as to which a proof of claim or motion or request for payment was timely filed in the Case may be determined and liquidated after the Effective Date pursuant to (i) an order of the Bankruptcy Court (which order has not been stayed, reversed or amended and as to which determination or any revision, modification or amendment thereof, and the time to appeal or seek review or rehearing thereof, has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (ii) applicable non-bankruptcy law.  Any Claim determined to be an Allowed Claim after the Effective Date pursuant to this section shall be treated as an Allowed Claim in accordance with the Plan.

24

**9.16    Disallowance of Claims without Further Order of the Court**.

As of the Effective Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a proof of Claim has not been filed by the Creditor, shall be deemed disallowed and expunged without further Order of the Bankruptcy Court. All Scheduled Claims that correspond to a proof of Claim filed by a particular Creditor shall be deemed to have been superseded by such later filed proof of Claim and the Scheduled Claims, regardless of priority, and shall be expunged from the claims register; provided however, that such proofs of Claim shall be subject to objection in accordance with Section 9.15 hereof.

**9.17    Disputed Claims**.

(a) Except to the extent the Court determines that a lesser amount is adequate, the Plan Administrator shall, on each Distribution Date, deposit in a Disputed Claims Reserve, Cash equal to the Distributions that would have been made to holders of Disputed Claims if such Claims were Allowed Claims in their full amounts or such lower amount as to which the holder of such Claim has agreed in writing or, in the case where any such Claim is unliquidated and/or contingent, the greater of (i) $1, and (ii) such other amount as is reserved by order of the Bankruptcy Court made upon motion of the Trustee, Plan Administrator, or the holder of such Claim.

(b) For purposes of effectuating the provisions of this Section 9.17 and the Distributions to holders of Allowed Claims, the Court, upon the request of any holder of a Claim, on the one hand, or the Trustee or Plan Administrator, on the other hand, may liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be the aggregate amounts of the Disputed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan and for purposes of the Disputed Claims Reserve.

(c) When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such holder would have been entitled if such holder's Claim were Allowed on the Effective Date, to the extent of available Cash to make such Distribution.

(d) In no event shall any holder of any Disputed Claim be entitled to receive (under this Plan or otherwise) any Cash payment which is greater than the amount reserved, if any, for such Disputed Claim pursuant to this Section 9.17.  In no event shall the Plan Administrator have any responsibility or liability for any loss to or of any amount reserved under this Plan unless such loss is the result of that party's fraud, willful misconduct, or gross negligence.  In no event may any Creditor whose Disputed Claim is subsequently allowed, pursue or recover or from any other Creditor in respect of any funds received as Distributions under the Plan.

(e) To the extent that a Disputed Claim ultimately becomes an Allowed Claim and

25

is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, then on the next succeeding Distribution Date, the Plan Administrator shall make, in accordance with the terms of this Plan, a Distribution of the excess amount reserved for such Disputed Claim.

(f) Any Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

**9.18**    **Limitations on Funding of Disputed Claims Reserve**.    Except as expressly set forth in the Plan, or otherwise agreed to in writing or ordered by the Court, neither the Plan Administrator shall have no duty or obligation to fund the Disputed Claims Reserve.

**9.19**    **Timing of Distributions on Disputed Claims Subsequently Allowed**.

In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Distribution Date that is at least fifteen (15) business days after such Claim is Allowed.

**9.20**    **No Payment or Distribution on Disputed Claims**.

Notwithstanding any provision to the contrary herein, no payments or other Distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim or some portion thereof is allowed by Final Order of the Bankruptcy Court.   For the avoidance of doubt, no portion of any Disputed Claim is entitled to a Distribution.   Holders of Disputed Claims shall be bound, obligated and governed in all respects by this Plan.

## ARTICLE 10 - PLAN INTERPRETATION, CONFIRMATION AND VOTING

**10.1**    **Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired**.

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

**10.2**    **Withdrawal and Modification of Plan**.

This Plan may be withdrawn or modified by the Debtor at any time prior to the Confirmation Date.   The Trustee or the Plan Administrator may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to substantial consummation thereof.   Upon request by the Plan Administrator, the Plan may be modified after substantial consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

26

### 10.3    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Plan, the laws of the State of New York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

### 10.4    Voting of Claims.

Each holder of an Allowed Claim as of the Record Date in Classes 1, 2, 3 and 4 shall be entitled to vote to accept or reject the Plan.  The Disclosure Statement Approval Order shall govern the manner and procedures for casting of Ballots.

### 10.5    Acceptance by Impaired Class.

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 10.6    Cram Down.

The Debtor will request, in the event that at least one (1) impaired Class entitled to vote on the Plan accepts the Plan, that the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the possible rejection of the Plan by any impaired Class entitled to vote on the Plan and the Plan shall constitute a motion for such relief.

## ARTICLE 11 - RETENTION OF JURISDICTION BY BANKRUPTCY COURT

**11.1**    From the Confirmation Date until entry of a final decree closing the Case, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor to any Creditors, holders of Claims, or other parties in interest;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

(c) to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d) to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court including, but not limited to, the Causes of Action. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction to hear and determine compromises and settlements of any and all Causes of Action;

(e) to enforce and interpret the provisions of this Plan, the Confirmation Order, the Plan Administrator Agreement;

(f) to hear and determine any matters relating to the appointment and replacement of the Plan Administrator;

(g) to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(h) to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(i) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, the Confirmation Order, or the Plan Administrator Agreement as may be necessary to carry out the purposes and the intent of this Plan;

(j) to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code; and

(k) to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated.

## ARTICLE 12 - MISCELLANEOUS PROVISIONS

### 12.1    Headings.

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

### 12.2    No Attorneys' Fees.

No attorneys' fees with respect to any Claim shall be payable under the Plan, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

### 12.3    Notices.

All notices, requests and demands by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, (iii) reputable overnight delivery service, all charges prepaid, or (iv) electronic mail, and shall be deemed to have been given when received and confirmed by telephone or reply email by the following parties:

<u>If to the Plan Administrator</u>:

Fred Stevens
c/o Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Email: fstevens@klestadt.com

With copy to:

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attn:    Sean C. Southard
         Christopher J. Reilly
Email: ssouthard@klestadt.com
         creilly@klestadt.com

**12.4    <u>Binding Effect</u>**.

The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).   The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Debtor's Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

[remainder of page intentionally blank]

Dated: New York, New York
        May 31, 2019

                                        EMC BRONXVILLE METROPOLITAN,
                                        LLC


                                        By:  /s/Fred Stevens_____
                                             Fred Stevens, solely as Chapter 11
                                        Trustee

Approved as to form:

By: /s/Sean C. Southard_____
        Sean C. Southard


Klestadt Winters Jureller Southard &
Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys for Fred Stevens, as Chapter 11 Trustee*